Cory L. Braddock, Esq.
cbraddock@swlaw.com
Idaho Bar No. 10882
**SNELL & WILMER LLP**
Key Business Center
702 W. Idaho Street, Suite 1100
Boise, ID 83702
Telephone: (505) 944-9026

Jonathan M. Saffer, Esq.
jsaffer@rllaz.com
AZ State Bar No. 022004
*Pro Hac Vice Admission Pending*
**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262

*Attorneys for Plaintiffs Ayche, LLC
and Hunter Constantine Marcuson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## EASTERN DIVISION

| | |
|---|---|
| Ayche, LLC, an Arizona Limited Liability Company; and Hunter Constantine Marcuson, an individual,<br><br>                    Plaintiffs,<br><br>v.<br><br>Dominate Defense, LLC, an Idaho Limited Liability Company; Jason Bunderson, an individual; and Barbara Bunderson, an individual,<br><br>                    Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br><br><br>**(Demand for Jury Trial)** |

Plaintiff Ayche, LLC, and Hunter Constantine Marcuson ("Plaintiffs"), by and through their attorneys, for their Complaint against defendants Dominate Defense, LLC, Jason Bunderson, and Barbara Bunderson ("Defendants"), allege as follows:

## PARTIES

1.　　Plaintiff Ayche, LLC ("Ayche") is a limited liability company organized under the laws of the State of Arizona.  Ayche has one member: Hunter Constantine Marcuson.

2.　　Plaintiff Hunter Constantine Marcuson ("Constantine") is an individual who resides in the State of Arizona

3.　　Defendant Dominate Defense, LLC ("Dominate") is a limited liability company organized under the laws of the State of Idaho.  Dominate has two members: Jason Bunderson and Barbara Bunderson.

4.　　Defendant Jason Bunderson is an individual who resides in the State of Idaho.

5.　　Defendant Barbara Bunderson is an individual who resides in the State of Idaho.

## JURISDICTION

6.　　This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under federal trademark law, 15 U.S.C. §§ 1051 et seq.

7.　　This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Arizona and citizens of Idaho, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     This Court has jurisdiction over this action pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

**VENUE**

9.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) & (2) because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**FACTS**

**I.     Constantine, a celebrity in firearm and competitive shooting circles, brought his concept for a new concealed-carry firearm belt product to Dominate.**

10.     Constantine is a professional competition shooter, firearms instructor and firearms content creator.

11.     As a professional competition shooter, Constantine has participated in over 300 matches around the world and has many top finishes.  His colleagues consider him one of the top shooters in the sport.  As a firearms instructor, Constantine has worked with several companies since 2019, teaching hundreds of students throughout the world.

12.     Through his competitive and professional success, Constantine has created a personal brand in the firearms space and has built a robust and loyal fan base.

13.     For example, Constantine's YouTube channel, which contains over 100 videos, has over 50,000 subscribers and over 3.1 million total views.  Constantine's Instagram page has nearly 45,000 followers and over 2,000 individual posts.  Constantine's TikTok profile has over 12,000 subscribers.  Across all of these social media platforms, Constantine's active fanbase includes more than 100,000 subscribers.

14.     Constantine's social media success has allowed him to employ a full-time videographer.  He also works with multiple freelance creative photography, videography, and graphic design contractors to create social media content.

15.     In summary, Constantine has spent the last five years of his life building his personal brand, and his name has become well-known and respected in the firearms industry.

16.     In 2021, Constantine, seeing a gap in the market, approached Jason Bunderson and Dominate with a concept for a new, concealed-carry firearm belt product.

17.     Although the parties made no written agreement, they agreed that Dominate would fabricate the final product, which Constantine would brand, market, and sell.

## II.     Constantine and Dominate cooperatively developed the Constantine Carry Belt.

18.     Constantine's goal was to produce a new concealed-carry firearm belt that, among other improvements, was more comfortable than any belt on the market, while retaining the rigidity and stability necessary for the concealed carrying of firearms.

19.     At the outset of the project, Constantine provided Dominate, through Jason Bunderson, with an early prototype and ideas for the belt that later evolved into the Constantine Carry Belt.

20.     Bunderson fabricated various belt prototypes that Constantine field-tested.

21.     Constantine thereafter provided Jason Bunderson and Dominate with input regarding modifications for improved competition and every day performance, which were incorporated into later versions of the belt.

22.    Through the collaboration between Dominate and Constantine, the belt that was ultimately developed represented the qualities and specifications preferred by Constantine and which facilitated his high-level shooting performance.

### III.    Ayche began marketing and selling the Constantine Carry Belt under the Constantine brand.

23.    By October 2022, the first version of the Constantine Carry Belt was complete.  Dominate fabricated the belt,  which Constantine marketed and sold through his Arizona limited liability company, Ayche.

24.    Beginning in October 2022, Constantine used his likeness and personal network within the firearms industry to advertise and market the belt to consumers nationwide.

25.    Ayche and Constantine used social media campaigns and content creation associated with Constantine's already popular social media platforms to create interest in the new belt.

26.    The success of the Constantine Carry Belt derives largely from its association with Constantine, whose success in the space created a strong base from which to launch the belt, and whose preferences and professional opinion about firearm-related products is valuable to prospective consumers deciding among competing products.

27.    By 2024, Dominate had fabricated over 20,000 belts for Ayche.

28.    During his time in the space, Constantine has spent in excess of $250,000 travelling to shooting matches, events and collaborations with other content creators. In 2024, Ayche sponsored 18 shooting matches for marketing purposes.

IV.     **Dominate began marketing and selling a functionally identical belt to the Constantine Carry Belt and began publicly making false claims about Plaintiffs and their product.**

29.     In July 2024, Constantine and Dominate parted ways, and Constantine procured other manufacturing for the Constantine Carry Belt.

30.     Prior to 2024, Dominate only sold competition shooting belts, selling as few as ten to thirty belts per month.

31.     However, in July 2024, Dominate—under the name American Operator Gear ("AOG")—began marketing and selling a belt functionally identical to the Constantine Carry Belt. Dominate rebranded the belt the "EDC Flex Carry Belt."

32.     On July 4, 2024, the Instagram account, @americanoperatorgear, which, upon information and belief, is controlled and managed by Defendants, publicly posted a one-and-a-half-minute video (the "July 4, 2024 Post") depicting and narrated by Jason Bunderson, the CEO and co-owner of Dominate Defense.

33.     In the July 4, 2024 Post, Jason Bunderson states, in part:

> Dominate Defense started in 2019 after we made a debut into the competition gun belt sector.  Over the past three years we have been working with companies like Hunter Constantine and Tier 1 Concealed.  We have co-designed the Hunter Constantine Belt and the Tier 1 EDCS Belt.

34.     During the video, and during Jason Bunderson's narration, images and video clips are shown of belts being used and manufactured, including a video clip showing a close-up view of the EDC Flex Carry Belt.

35.     During the video, and at the moment Jason Bunderson narrates, "we have co-designed the Hunter Constantine Belt," a video clip is shown of Jason Bunderson wearing the EDC Flex Carry Belt.

36.     Because of the nearly identical appearance of the Constantine Carry Belt and the EDC Flex Carry Belt, and because of the references to Constantine in the video, numerous users posted comments to the July 4, 2024 Post questioning the relationship between the two belts.

37.     In an apparent response to the consumer concerns, the @americanoperatorgear account commented to the July 4, 2024 Post:

> [W]e are the designer and the manufacturer of the belt.
> I can prove it.
> Made in America.

38.     In the same thread, @barbarabunderson, an account belonging to co-owner of Dominate Defense Barbara Bunderson, made publicly viewable comments offering to prove that Dominate Defense was the original designer of the belt.

39.     Both of Barbara Bunderson's comments to the July 4, 2024 Post were publicly "liked" and thereby promoted by @americanoperatorgear.

40.     In one direct message sent by Barbara Bunderson to one of the commentors on the July 4, 2024 Post, she stated:

> Mike Pikula read your comment on American operator gear about proving original designer and Manufacture.  The company had been making gun belts that included many of the components in this design for years.  Hunter actually wears this company's speed belt and how he knew who to contact to design and manufacture.  Happy to provide whatever would satisfy proof it is not a cheaper knock off.

41.     In other comments to the July 4, 2024 Post, @americanoperatorgear affirmatively represented that Constantine was nothing more than a marketer and/or distributor of the belt, including but not limited to the following statements:

> [I]t's not a knock off.
> Hunter took total credit for the belt from the beginning.
> Explain to me how he would have designed a belt when he doesn't have the ability to do so.
> We have been building belts for 6 years and have designed the best belts in USPSA.
> We also improved the belt listening to the costumer.
> A large majority wanted less elastic.
> So we did just that and changed several other things.
> To make the belt that we designed better.
>
> . . . .
>
> In the video for the co-designer it is my son that co-designed.  I don't take full credit for things that other people do.  This was a joint project.  **We designed and mfg and Hunter marketed.  This was a white label agreement.**  It was a mistake on my part for not standing up sooner.  We are no longer the MFG on the Constantine belt.  We are offering a different upgraded version.  That does offer different features.
>
> . . . .
>
> **My son and I designed the belt the only thing Hunter brought was more elastic than I was already putting in me ranger EDC BELT.**
>
> **Everything else was ours.**
>
> . . . .
>
> It was a great deal for both of us, until he sent me a predatory manufacturing agreement claiming all the IP that he had nothing to do with.
>
> If he took the IP that he brought to the table.
>
> He would leave with a piece of polyester elastic.

42.    An Instagram user, @zach_larson59—who upon information and belief is a representative of Dominate—also made several comments to the July 4, 2024 Post and responses to comments therein, including the following statements:

> . . . no @hunter_constantine 's belt is the @americanoperatorgear belt we have at home.  They designed and built his belts, I've sat at the literal sewing machines.

> . . . that's funny because I had more input on the design than he did[.]

> . . . alright buddy I forgot you were there when we designed it[.]

> . . . ya I've got a prototype I'm wearing right now that is older than when he released "his belt".  And it's not all of a sudden, @americanoperatorgear was making the same belt for tier 1 concealed, go look it up on their website too.  Same belt. @americanoperatorgear design[.]

> . . . [Constantine] didn't contract them to build his belt!  He just wanted one that they were already selling with his name on it[.]

> . . . it's @americanoperatorgear design and they built the belt for [Constantine].

> . . . it does if Jason was the one who designed it and put hunters logo on it just for his run[.]

> . . . @hunter_constantine is ripping people off[.]

> . . . [Constantine's] is the knock off[.]

> . . . it's because it's @americanoperatorgear s design. @hunter_constantine is the one who is saying it's his belt.  They come off the same sewing machine, I have sat at the machine for both iterations.

43.    Instagram user, @zach_larson59, made several additional comments to the July 4, 2024 Post which were publicly "liked" and thereby promoted by @americanoperatorgear, including:

> . . . @americanoperatorgear designed and built [Constantine's] belt, hunter was the one who stole it and they have proof[.]

> @hunter_constantine is the snake, @americanoperatorgear is the one who designed and made his built and he tried to screw them[.]

44.    A separate video was posted publicly on YouTube by the AOG channel on June 24, 2024 (the "June 24, 2024 Video") containing what appears to be the entirety of the video from which the clip was taken for the July 4, 2024 Post.

45.    In the YouTube public comment section to the June 24, 2024 Video, a user asked, "What's the difference between the Hunter Constantine belt and the Flex Carry EDC Belt since you codesigned it??"  In response, the AOG channel responded:

> There is different materials, more webbing and less elastic, and there is no metal in the flex carry.  Instead it has a polymer insert.  ***The belt was codesigned with my son Cody.  Hunter's only role was a dealer.***

46.    The AOG Instagram main page and YouTube channel include a link to the AOG website where the "EDC Flex Carry Belt," among other products, can be purchased.

47.    As of January 9, 2025, on the AOG website page describing the EDC Flex Carry Belt products, AOG states, in part:  "From the original designers and manufacturer of the Tier 1 EDCS and HC belt; we are proud to introduce the Flex Carry Belt, a testament to American craftsmanship."

48.    Since the end of the manufacturing relationship between Dominate and Constantine, Defendants have continued to make false statements and misrepresentations in their marketing of Dominate's belt products, including, without limitation, that Constantine acted only as a distributor of the Constantine Carry Belt.

49.     When Defendants began making public misrepresentations and false and misleading statements to customers about Constantine, the Constantine Carry Belt, and Constantine's relationship or association with Dominate in conjunction with the Defendants' launch of the EDC Flex Carry Belt in 2024, Plaintiffs saw a correlated and significant decrease in Constantine Carry Belt sales and corresponding losses in revenue.

50.     Since July 2024, Plaintiffs have suffered, and continue to suffer, losses in revenue in excess of $200,000.00 caused by Defendants' misrepresentations and false and misleading statements.

51.     The Hunter Constantine Brand has also been damaged by Defendants' misrepresentations and false and misleading statements.

## COUNT I
### False Advertising – Constantine Carry Belt
### 15 U.S.C. § 1125(a)(1)(B)
### (By Ayche against all Defendants)

52.     Plaintiffs incorporate and reallege paragraphs 10–15, 17, 20, 22–32, 36, 41–46, and 48–51 as though fully set forth herein.

53.     Ayche has engaged in interstate commerce since October 2022 through its online sales of firearm-related goods, including the Constantine Carry Belt.

54.     Ayche has built a valuable reputation as producing high-quality products that are developed by Constantine, including the Constantine Carry Belt.

55.     During Constantine and Dominate's collaboration, Constantine rigorously field-tested protypes produced by Dominate and accordingly requested changes to the belt's specifications and parameters to conform to his personal preferences.

56.     Ultimately, the Constantine Carry Belt was developed to Constantine's preferred parameters and specifications, with his own personal competitive shooting and every day concealed-carry performance in mind.

57.     For this reason, the belt has always been marketed and sold by Ayche as Constantine's preferred competition and concealed-carry belt, built by shooters, for shooters.

58.     Despite this, in connection with its interstate commercial advertising and marketing of the EDC Flex Carry Belt product, Dominate, under the name AOG, and through Jason and Barbara Bunderson, made and promoted public online statements on their July 4, 2024 Post and June 24, 2024 Video that falsely claimed that Constantine acted as nothing more than a distributor, marketer, and/or dealer of the Constantine Carry Belt.

59.     The Defendants also made and promoted public online statements on their July 4, 2024 Post and June 24, 2024 Video falsely representing that Constantine Carry Belt was an existing product that Constantine merely placed his logo on.  The false statements include, without limitation, comments that Constantine "stole" the belt, that Constantine is "ripping people off," and that he is a "snake" and tried to "screw" the Defendants.

60.     At the time the Defendants made the false and misleading statements, they had knowledge that they were untrue.

61.     The false statements misrepresent the nature and qualities of the Constantine Carry Belt by suggesting that the belt was in no way field-tested, approved, and/or built to Constantine's desired parameters and specifications.

62.    The false statements are material.  A belt built to Constantine's specifications is desirable to customers because it embodies the features, qualities, and functionality that he values as a highly successful professional competition shooter and popular firearms expert.

63.    Defendants' false statements regarding Constantine's involvement in the development of the Constantine Carry Belt also misrepresent the nature, characteristics, and qualities of Ayche's commercial activities, by suggesting that, contrary to Ayche's marketing, Ayche's has merely re-branded Dominate's EDC Flex Carry Belt or a prior version thereof with Constantine's name.

64.    Defendants' false statements have the capacity to deceive, and already have deceived, a substantial segment of potential customers into believing that the Constantine Carry Belt has no meaningful connection or association to his firearm expertise and skill or his prestige as a professionally successful competitive shooter.

65.    The deception is material because it is likely to negatively influence a consumer's decision whether to purchase the Constantine Carry Belt or other Ayche products.

66.    Upon information and belief, Defendants made the false statements as alleged herein as a part of a campaign to mislead and deceive consumers about the nature, characteristics, and qualities of the Constantine Carry Belt.

67.    Upon information and belief, Defendants intentionally engaged in this campaign to disparage the Constantine Carry Belt and obtain an improper competitive advantage for its competitive product, the EDC Flex Carry Belt.

13

68.    Defendants' false advertisements and commercial misrepresentations have caused damage to Ayche's commercial reputation, the market reputation of the Constantine Carry Belt, and lost Constantine Carry Belt sales in an amount to be determined at trial.

69.    Since July 2024, Plaintiffs have suffered, and continue to suffer, losses in revenue in excess of $200,000.00 caused by Defendants' false statements.

70.    Dominate's sales of the EDC Flex Carry Belt are attributable to Defendants' false advertisements and commercial misrepresentations about the Constantine Carry Belt, because those misrepresentations caused confusion about the nature, characteristics, and qualities of both belts.

71.    Ayche is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under 15 U.S.C. §§ 1116, 1117, together with interest.

## COUNT II
**False Advertising – Constantine Carry Belt**
**15 U.S.C. § 1125(a)(1)(B)**
**(By Constantine against all Defendants)**

72.    Plaintiffs incorporate and reallege paragraphs 10–15, 17, 20, 22–32, 36, 41–46, and 48–51 as though fully set forth herein.

73.    Constantine's prominence as a successful professional competition shooter and his related social media and internet fame have garnered him significant public and consumer recognition, particularly among firearm enthusiasts and consumers likely to purchase firearm-related goods.

74.     Because of his public and consumer recognition, Constantine's personal brand carries with it substantial commercial value, especially when used in a manner that can be construed as an endorsement of a firearm-related product.

75.     During Constantine and Dominate's collaboration, Constantine rigorously field-tested protypes produced by Dominate and accordingly requested changes to the belt's specifications and parameters to conform to his personal preferences.

76.     Ultimately, the Constantine Carry Belt was developed to Constantine's preferred parameters and specifications, with his own personal competitive shooting and every day-carry performance in mind.

77.     For this reason, the belt has always been marketed and sold by Ayche as Constantine's preferred competition and concealed-carry belt, built by shooters, for shooters.

78.     Despite this, in connection with its interstate commercial advertising and marketing of the EDC Flex Carry Belt product, Dominate, under the name AOG, and through Jason and Barbara Bunderson, made and promoted public online statements that claimed that Constantine acted as nothing more than a distributor, marketer, and/or dealer of the Constantine Carry Belt.

79.     The Defendants also made and promoted public online statements falsely representing that Constantine Carry Belt was an existing product that Constantine merely placed his logo on.

80.     At the time the Defendants made the false statements, they had knowledge that they were untrue.

81.    These false statements misrepresent Constantine's commercial activities as being limited to marketing and sales rather than including product development.

82.    These false statements suggest—and indeed outright say—that Constantine misrepresented and/or lied about the commercial activities he undertook with respect to the Constantine Carry Belt.

83.    The false statements have confused, and are likely to continue confusing, consumers regarding the nature of Constantine's commercial activities and the Constantine Brand.

84.    The false statements made and promoted by Dominate through the Bundersons have inspired negative comments about Constantine and his brand from potential consumers of Constantine's social media content and products.

85.    The false statements made and endorsed by Dominate through the Bundersons harmed Constantine and the market reputation of his personal brand in an amount to be determined at trial.

86.    Since July 2024, Plaintiffs have suffered, and continue to suffer, losses in revenue in excess of $200,000.00 caused by Defendants' false statements

87.    Upon information and belief, Defendants intended to harm the Constantine Brand in order to obtain an improper competitive advantage for the EDC Flex Carry Belt.

88.    Defendants' sales of the EDC Flex Carry Belt are attributable to the harm they caused the Constantine Brand.

89.    Constantine is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable

attorneys' fees, and costs of the action under 15 U.S.C. §§ 1116, 1117, together with interest.

## COUNT III
### False Advertising – EDC Flex Carry Belt
### 15 U.S.C. § 1125(a)(1)(B)
### (By Ayche against all Defendants)

90.     Plaintiffs incorporate and reallege paragraphs 10–15, 17, 23–32, 41, and 44–51 as though fully set forth herein.

91.     On Dominate's AOG website page, in connection with its commercial advertisement of its EDC Flex Carry Belt products, AOG states, in part:  "From the original designers and manufacturer of the Tier 1 EDCS and HC belt; we are proud to introduce the Flex Carry Belt, a testament to American craftsmanship."

92.     This statement is misleading in that it suggests that the EDC Flex Carry Belt is materially different to the Constantine Carry Belt.

93.     Dominate and its representatives, including the Bundersons, have made other similar misleading statements in connection with their commercial advertisement of the EDC Flex Carry Belt, specifically in connection with their July 4, 2024 Post and June 24, 2024 Video.  These statements include, without limitation, that they "made the belt that [they] designed better," and that "[they] are offering a different upgraded version" with "different features."

94.     In fact, EDC Flex Carry Belt is functionally identical to the current version of the Constantine Carry Belt being sold by Ayche.

95.     Specifically, both belts are meant to be functional without the need for pants with belt loops, and both feature the same basic design including, without limitation, two quick adjustment ladder loop positions with a hook buckle for quick tension adjustment; a rigid reinforced area for attaching protective gear; and an adjustable elastic section allowing for comfortable and adaptive fit to the user's body.

96.     On information and belief, the misleading statement on Dominate's AOG website has been publicly visible since approximately the time Dominate began marketing the EDC Flex Carry Belt.

97.     The misleading statements on Dominate's AOG website and social media posts misrepresent the nature, characteristics, and qualities of Dominate's EDC Flex Carry Belt by falsely suggesting it is materially different from Ayche's Constantine Carry Belt or is somehow substantially improved.

98.     The misleading statements on Dominate's AOG website and social media posts are material because they are likely to influence a consumer's decision whether to purchase the EDC Flex Carry Belt or the Constantine Carry Belt, two products in direct competition with one another.

99.     Upon information and belief, Defendants made the false statements as alleged herein as a part of a campaign to mislead and deceive consumers about the nature, characteristics, and qualities of both the EDC Flex Carry Belt and the Constantine Carry Belt.

100.    Upon information and belief, Defendants intentionally engaged in this campaign to both disparage the Constantine Carry Belt and obtain an improper competitive advantage for the EDC Flex Carry Belt.

101.    Defendants' false advertisements and commercial misrepresentations have caused Ayche losses in sales and revenue from Constantine Carry Belt.

102.    Since July 2024, Plaintiffs have suffered, and continue to suffer, losses in revenue in excess of $200,000.00 caused by Defendants' false and misleading statements.

103.    Dominate's sales of the EDC Flex Carry Belt and Ayche's loss of sales of the Constantine Carry Belt are both attributable to Defendants' false advertisements and commercial misrepresentations, which caused confusion about the nature, characteristics, and qualities of both belts.

104.    Ayche is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under 15 U.S.C. §§ 1116, 1117, together with interest.

<u>**COUNT IV**</u>
**False Endorsement**
**15 U.S.C. § 1125(a)(1)(A)**
**(By Constantine against all Defendants)**

105.    Plaintiffs incorporate and reallege paragraphs 10–15, 17, 20, 22–36, and 41–51 as though fully set forth herein.

106.    Constantine's prominence as a successful professional competition shooter and his related social media and internet fame have garnered him significant public and

consumer recognition, particularly among firearm enthusiasts and consumers likely to purchase firearm-related goods.

107.    Because of his public and consumer recognition, Constantine's personal brand carries with it substantial commercial value, especially when used in a manner that can be construed or interpreted by consumers as an endorsement of a firearm-related product.

108.    Constantine has a right to prevent the Defendants' use of his name or any indicia of his persona in a manner which misleads, confuses, or deceives consumers into believing he has a present affiliation, connection, or association with the Defendants.

109.     Constantine has a right to prevent the Defendants' use of his name or any indicia of his persona in a manner which misleads, confuses, or deceives consumers into believing he presently sponsors, approves, or endorses the EDC Flex Carry belt or Dominate's commercial activities.

110.    Dominate, under the name AOC, and through Jason and Barbara Bunderson, in fact, did use Constantine's name in a misleading manner in connection with its commercial advertising of its products, including the EDC Flex Carry Belt.

111.    The manner in which Defendants used Constantine's name in its commercial advertising of its products is likely to cause consumers to falsely believe that Constantine has a present commercial relationship with Dominate and that Constantine sponsors, approves, or endorses the EDC Flex Carry Belt and Dominate's commercial activities.

112.    In the July 4, 2024 Post,  which contains video clips depicting the EDC Flex Carry Belt, Jason Bunderson states, in part, "Over the past three years we have been working with companies like Hunter Constantine and Tier 1 Concealed."

113.    During the video in the July 4, 2024 Post, and at the moment Jason Bunderson narrates, "we have co-designed the Hunter Constantine Belt," a video clip is shown of Jason Bunderson wearing the EDC Flex Carry Belt.

114.    Additionally, Dominate has used Constantine's name in the advertisement of its products on its online store, including the statement contained in its description of the EDC Flex Carry Belt product:  "From the original designers and manufacturer of the Tier 1 EDCS and HC belt; we are proud to introduce the Flex Carry Belt, a testament to American craftsmanship."

115.    Using Constantine's name in this manner strongly implies Constantine's present sponsorship or approval of the EDC Flex Carry Belt and a present association between Dominate and Constantine, and Defendants have therefore confused and deceived customers to Constantine's detriment.

116.    Since the point at which Constantine sourced other manufacturing for the Constantine Carry Belt, the commercial relationship between the parties ceased, and Constantine has not endorsed and does not endorse any Dominate product.  In fact, the Constantine Carry Belt is a direct competitor of Dominate's EDC Flex Carry belt, and any endorsement by Constantine of that product would directly contradict his own commercial interests.

117.    Upon information and belief, Defendants intentionally used Constantine's name in a misleading manner to imply a non-existent endorsement by Constantine of the EDC Flex Carry Belt and Dominate's commercial activities and derive an improper commercial benefit therefrom.

118.    Constantine also has a right to prevent the Defendants' use of his name or any indicia of his persona in a manner which misleads, confuses, or deceives consumers into believing his former affiliation, connection, or association with Defendants was one in which he only acted as a distributor, marketer, and/or dealer.

119.    Despite this, in connection with its interstate commercial advertising and marketing of the EDC Flex Carry Belt product, Dominate, under the name AOG, and through Jason and Barbara Bunderson, made and promoted public online statements on their July 4, 2024 Post and June 24, 2024 Video that falsely claimed that Constantine acted as nothing more than a distributor, marketer, and/or dealer of the Constantine Carry Belt prior to the dissolution of their commercial relationship.

120.    The Defendants also made and promoted public online statements on their July 4, 2024 Post and June 24, 2024 Video falsely representing that the Constantine Carry Belt was an existing product that Constantine merely placed his logo on.  The false statements include, without limitation, comments that Constantine "stole" the belt, that Constantine is "ripping people off," and that he is a "snake" and tried to "screw" the Defendants.

121.    At the time the Defendants made the false and misleading statements, they had knowledge that they were untrue and that Constantine's affiliation with Dominate prior to their separation was far more than simply a distributor.

122.    These false statements suggest—and indeed outright say—that Constantine misrepresented and/or lied about the commercial activities he undertook with Dominate with respect to the Constantine Carry Belt prior to their separation.

123.    Constantine has suffered damage resulting from Dominate's false and misleading use of his name in conjunction with the commercial advertising of its products, including damage to his reputation, brand, and persona.

124.    Since July 2024, Plaintiffs have suffered, and continue to suffer, losses in revenue in excess of $200,000.00 caused by Defendants' false and misleading statements.

125.    Defendants' sales of the EDC Flex Carry Belt are attributable to their false and misleading use of Constantine's name in connection with their commercial advertising.

126.    Constantine is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT V
**Injunctive Relief**
**15 U.S.C. § 1116**
**(By Ayche against Dominate and the Bundersons)**

127.    Plaintiffs incorporate and reallege paragraphs 10–15, 17, 20, 22–36, and 41–126 as though fully set forth herein.

128.    The misrepresentations made by Dominate through the Bundersons regarding the nature, qualities, and characteristics of the Constantine Carry Belt and the EDC Flex Carry Belt will cause irreparable harm to Ayche's customer base, market share, and future sales.

129.    The misrepresentations made by Dominate through the Bundersons about Constantine's commercial activities will cause irreparable harm to the Constantine Brand.

130.    The Defendants' misleading use of Constantine's name in connection with its marketing of the EDC Flex Carry Belt will cause irreparable harm to Constantine's reputation and persona.

131.    The harm that will be suffered by Constantine and Ayche cannot be remedied by damages.

132.    Constantine and Ayche therefore seek an injunction against Dominate and the Bundersons, requiring them to depublish the false and misleading statements regarding the nature, qualities, and characteristics of the Constantine Carry Belt, the EDC Flex Carry Belt and Constantine's commercial activities and the affiliation, connection, or association between Dominate and Constantine.

## COUNT VI
### Common Law Unfair Competition
### (By Ayche as to all Defendants)

133.    Plaintiffs incorporate and reallege paragraphs 10–15, 17, 20, 22–32, 36, 41–46, and 48–51 as though fully set forth herein.

134.    Ayche has built a valuable reputation as producing high-quality products that are developed by Constantine, including the Constantine Carry Belt.

24

135.    During Constantine and Dominate's collaboration, Constantine rigorously field-tested protypes produced by Dominate and accordingly requested changes to the belt's specifications and parameters to conform to his personal preferences.

136.    Ultimately, the Constantine Carry Belt was developed to Constantine's preferred parameters and specifications with his own personal competitive shooting and everyday concealed-carry performance in mind.

137.    For this reason, the belt has always been marketed and sold by Ayche as Constantine's preferred competition and concealed-carry belt, built by shooters, for shooters.

138.    Despite this, in connection with its marketing of the EDC Flex Carry Belt product, Dominate, under the name AOG, and through Jason and Barbara Bunderson, made and promoted public online statements on their July 4, 2024 Post and June 24, 2024 Video that falsely claimed that Constantine acted as nothing more than a distributor, marketer, and/or dealer of the Constantine Carry Belt.

139.    The Defendants also made and promoted public online statements on the July 4, 2024 Post and June 24, 2024 Video falsely representing that Constantine Carry Belt was an existing product that Constantine merely placed his logo on.  The false statements include, without limitation, comments that Constantine "stole" the belt, that Constantine is "ripping people off," and that he is a "snake" and tried to "screw" the Defendants.

140.    At the time the Defendants made the false and misleading statements, they had knowledge that they were untrue.

141.    The false statements misrepresent the nature and qualities of the Constantine Carry Belt by suggesting that the belt was in no way field-tested, approved, and/or based on Constantine's desired parameters and specifications.

142.    The false statements are material.  A belt built to Constantine's specifications is desirable to customers because it embodies the features, qualities, and functionality that he values as a highly successful professional competition shooter and popular firearm expert.

143.    Defendants' false description of fact regarding Constantine's involvement in the development of the Constantine Carry Belt also misrepresents the nature, characteristics, and qualities of Ayche's commercial activities by suggesting that, contrary to Ayche's marketing, Ayche's has merely re-branded Dominate's EDC Flex Carry Belt or a prior version thereof with Constantine's name.

144.    Defendants' false statements have the capacity to deceive, and already have deceived, a substantial segment of potential customers into believing that the Constantine Carry Belt has no meaningful connection or association to his firearm expertise and skill or his prestige as a professionally successful competitive shooter.

145.    The deception is material because it likely to negatively influence a consumer's decision whether to purchase the Constantine Carry Belt or other Ayche products.

146.    Upon information and belief, Defendants made the false statements as alleged herein as a part of a campaign to mislead and deceive consumers about the nature, characteristics, and qualities of the Constantine Carry Belt.

147.    Upon information and belief, Defendants intentionally engaged in this campaign to disparage the Constantine Carry Belt and obtain an improper competitive advantage for its competitive product, the EDC Flex Carry Belt.

148.    Defendants' false advertisements are to the commercial detriment of Ayche, because they are likely to affect the conduct of prospective purchasers of the Constantine Carry Belt and divert sales from Ayche to Defendants.

149.    Ayche is entitled to, among other relief, injunctive relief and an award of actual damages, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**<u>COUNT VII</u>**
**Defamation**
**(By Constantine against all Defendants)**

150.    Plaintiffs incorporate and reallege paragraphs 10 through 51 as though fully set forth herein.

151.    In connection with the marketing of the EDC Flex Carry Belt product, Dominate, under the name AOG and through Jason and Barbara Bunderson, publicly promoted and published statements falsely claiming Dominate was the sole designer of the EDC Flex Carry Belt, the Constantine Carry Belt, and their underlying designs, and falsely claiming that Constantine acted as nothing more than a distributor of the Constantine Carry Belt.

152.    Dominate, under the name AOG and through Jason and Barbara Bunderson, also publicly promoted and published false statements about Constantine including,

without limitation, that Constantine "stole" the belt, that Constantine is "ripping people off," and that he is a "snake" and tried to "screw" the Defendants.

153.    Defendants knew at all times relevant to the allegations in this Complaint that the statements were false.

154.    By communicating directly to customers and promoting communications to customers stating that Constantine was not involved in the development behind the Constantine Carry Belt, Defendants harmed Constantine's reputation, adversely affecting the public's perception of Constantine by suggesting that he is stealing or passing off products designed by others as his own.

155.    The false statements published and promoted by Dominate further exposed Constantine and to financial injury related to his sale through Ayche of Hunter Constantine branded products, including the Constantine Carry Belt.

156.    Because of Defendants' defamatory communications, Constantine has suffered damages, including but not limited to injury to his reputation and loss of sales of the Constantine Carry Belt.

**<u>COUNT VIII</u>**
**Declaratory Judgment**
**28 U.S.C. § 2201**
**(By all Plaintiffs against all Defendants)**

157.    A true, present, and justiciable controversy exists between the Plaintiffs and Defendants as alleged in this Complaint.

158.   Plaintiffs and Defendants have severed their manufacturing relationship and are currently manufacturing and selling belts derived from the same design attributable to the collaborative work of both parties.

159.   Neither Plaintiffs nor Defendants have secured any patent or related protection in conjunction with the design of either the Constantine Carry Belt or the EDC Flex Carry Belt, both of which have been and are currently being sold and marketed to consumers.

160.   No agreement, written or otherwise, has been made between Plaintiffs or Defendants related to the ownership of any intellectual property or associated rights in connection with the Constantine Carry Belt, the EDC Flex Carry Belt, or their underlying designs.

161.   Because there is an actual dispute between the parties related to the marketing and sale of the Constantine Carry Belt and the EDC Flex Carry Belt, Plaintiffs seek a declaration that the parties hold co-equal, unprotected rights to produce and sell their respective belts.

162.   Specifically, Plaintiffs request that this Court make a finding and issue appropriate orders stating that neither Defendants nor Plaintiffs have any exclusive ownership interest in the design of the Constantine Carry Belt or the EDC Flex Carry Belt such that they would have the exclusive right to produce and sell such products or be able to enjoin the other party from doing so on the basis of federal copyright, patent, or other related law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs seek the entry of judgment against Defendants as follows:

1.     That Defendants have violated 15 U.S.C. § 1125(a);

2.     That Defendants have engaged in unfair competition under Idaho state law;

3.     Granting compensatory damages in an amount according to proof at trial against all Defendants, in an amount no less than $200,000.00;

4.     Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with 15 U.S.C. § 1117 and other applicable law, enhanced as appropriate to compensate Plaintiffs for the damages caused thereby;

5.     Granting Injunctive Relief as provided under 15 U.S.C. § 1116 and other applicable law permanently enjoining Defendants, their employees, agents officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

     a.   engaging in any activity constituting unfair competition with Plaintiff;

     b.   making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Defendants are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiffs;

    c.  using or authorizing any third party to use in connection with any goods any false description, false representation, or any marks, names, words, symbols, or devices that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

    d.  using or authorizing any third party to use in connection with any goods any false description, false representation, or any marks, names, words, symbols, or devices that misrepresent the nature, characteristics, or qualities of Ayche's goods;

6.    Awarding Plaintiffs their attorney fees as provided under 15 U.S.C. § 1117;

7.    Awarding Plaintiffs interest, including prejudgment and post-judgment interest, on the foregoing sums;

8.    For an order declaring that neither Plaintiffs nor Defendants hold any ownership interest in the design of the Constantine Carry Belt or the EDC Flex Carry Belt or related intellectual property such that they would have the exclusive right to produce and sell such products or be able to prevent the other party from doing so;

9.    For costs incurred herein; and

10.    For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.


DATED this February 13, 2025.

SNELL & WILMER LLP


By:     s/ Cory L. Braddock
        Cory L. Braddock


*Attorneys for Plaintiffs Ayche, LLC
and Hunter Constantine Marcuson*